UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL UNSWORTH, et al., | ) | CASE NO: 5:24-cv-00975 |
| | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| DICKEY'S BARBECUE | ) | |
| RESTAURANTS, INC., et al., | ) | |
| | ) | (Resolves Docs. 14, 15) |
| Defendants. | ) | |
| | ) | |

Before the Court are Defendant Dickey's Barbecue Restaurants, Inc.'s motion to stay in favor of mediation and, if necessary, arbitration (Doc. 15) and Defendant Luminate Bank, Inc.'s motion to dismiss (Doc. 14.). For the reasons stated below Dickey's motion to stay is GRANTED, and Luminate's motion to dismiss is DENIED without prejudice. The matter is hereby STAYED pending mediation/arbitration.

I.   FACTUAL BACKGROUND

Plaintiff Daniel Unsworth formed DLU, LLC for the purposes of operating a Dickey's Barbeque Restaurant to be located in Kent, Ohio. Doc. 1, ¶1, 2. On February 1, 2022, Unsworth entered into a Franchise Agreement with Dickey's. Doc. 1, ¶17. Plaintiffs Jeremey and Nicole Kolbach formed Star BBQ, LLC for the purpose of operating a Dickey's Barbeque Restaurant in Star, Idaho. Doc. 1, ¶3-5. The Kolbachs entered into a Franchise Agreements with Dickey's on January 21, 2022. Doc. 1, ¶17. These agreements include mediation and arbitration clauses. Doc. 1-4, p. 58-59: Doc. 1-5, p. 58-59. Plaintiffs allege that Dickey's made false representations during phone calls and meetings and provided them with false pro forma profit and loss

1

statements to induce them into signing the agreements. Doc. 1, ¶¶ 12-17. After Plaintiffs signed the Franchise Agreements, Dickey's referred Plaintiffs to Luminate for financing. Doc. 1, ¶18. Plaintiffs assert that Dickey's sent the false information to Luminate. Doc. 1, ¶19. Plaintiffs assert that Luminate did not verify the information and that it knew that the information from Dickey's was not accurate. Doc. 1, ¶13, 21, 22, 28.  On September 9, 2022, Luminate entered into a Loan Agreement with DLU, LLC. Doc. 1-9. On October 25, 2022, Luminate entered into a Loan Agreement with Star BBQ, LLC. Doc. 1-8. Those loans were personally guaranteed by Unsworth and the Kolbachs. Docs. 1-8, p. 6 and 1-9. p. 6.

Plaintiffs' restaurant franchises subsequently failed. Doc. 1, ¶39. Plaintiffs brought the instant complaint asserting the following claims: 1) intentional and fraudulent misrepresentation, inducement and concealment by Unsworth and Kolbach against Dickey's, 2) negligent misrepresentation, inducement and concealment by Unsworth and Kolbach against Dickey's, 3) intentional and fraudulent misrepresentation, inducement and concealment by Unsworth and Kolbach against Luminate Bank, 4) negligent misrepresentation, inducement and concealment by Unsworth and J. Kolbach against Luminate Bank, 5) negligence, 6) civil conspiracy- against Dickey's and Luminate Bank, 7) aiding and abetting fraud against Dickey's and Luminate Bank, 8) violation of Ohio business opportunity plans act ("BOPA") – by Unsworth against Dickey's and Luminate Bank, and 9) declaratory judgment. Doc. 1.  Dickey's filed a motion to stay these proceedings in favor of mediation and, if necessary, arbitration. Doc. 15.  Plaintiffs oppose this motion. Doc. 20. Luminate filed a motion to dismiss. Doc. 14.  Plaintiffs oppose this motion. Doc. 19.

2

II. **MOTION TO STAY IN FAVOR OF MEDIATION AND, IF NECESSARY, ARBITRATION**

The Sixth Circuit set forth the standard for reviewing a motion to compel arbitration in *Stout v. J.D. Byrider*, 228 F. 3d 709 (6th Cir. 2000) as follows:

> A court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Id*. at 714. Any doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration. *Id.* at 715.

   a. **The Parties Agreed to Mediate**

There is no dispute that the parties agreed to mediations/arbitration. Notably, Plaintiffs attached two franchise agreements to their complaint, and they acknowledge that they do not assert breach of contract claims. Doc. 1, Ex 1, 2. Both of these agreements contain the following mediation/arbitration provisions:

> **MEDIATION**. … the parties agree to submit all disputes, controversies, claims, and causes of action between Dickey's and its affiliates and its and their respective shareholders, officers, directors, agents, and/or employees, and you, your Owner/Operator, and each of your Investors and/or employees, shareholders, officers, and directors relating to alleged breaches or failures to perform arising out of or relating to this Agreement (and any attachments or addenda to this Agreement or any provision herein), or the relationship created by this Agreement (collectively, 'Disputes') to nonbinding mediation prior to filing any action in court or any in arbitration with respect to the Dispute. The mediation shall be conducted in Collin County, Texas.
>
> ….
>
> ARBITRATION. …all Disputes that are not resolved through mediation in accordance with Article 27.1, including all disputes relating to the scope, validity, or enforceability of this Arbitration Agreement and any provision in this Article 27.2, shall be submitted for binding arbitration to the office of the AAA located

3

nearest to Dickey's corporate headquarters in Dallas, Collin County, Texas, on demand of either party.

Doc. 1-4, p. 58-59: Doc. 1-5, p. 58-59.

There is no dispute that the parties agreed to mediation/arbitration.

### b. The Scope of the Agreement

The parties agreed to mediate "all disputes… relating to alleged breaches or failures to perform arising out of or relating to this Agreement, or the relationship created by this Agreement ('Disputes')" and to arbitrate "all Disputes that are not resolved through mediation … including all disputes relating to the scope, validity, or enforceability of this Arbitration Agreement[.]" Doc. 1-4, p. 58-59: Doc. 1-5, p. 58-59. The Sixth Circuit has held that "an arbitration clause requiring arbitration of any dispute arising out of an agreement is 'extremely broad.'" *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc*., 350 F.3d 568, 578 (6th Cir. 2003) (quoting *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir.1983). Specifically, the phrase "'arising out of' is broad enough to include a claim of fraudulent inducement of a contract." *Highlands*, 350 F.3d at 578. Here, the language not only encompasses claims "arising out of" the Agreements themselves, but also out of the relationship created by the Agreements. Thus, this language is broader even than that previously discussed by the Sixth Circuit. The Court concludes that the parties' arbitration agreements encompass at least some, if not if not all of Plaintiffs' claims. As discussed below, the parties agreed to arbitrate the scope of the clause itself and therefore, this Court will leave such determinations to the arbitrator.

### c. The Delegation Clause

The Federal Arbitration Act permits parties to agree that "an arbitrator, rather than a court, will determine 'gateway' questions of 'arbitrability,' such as whether the parties have

agreed to arbitrate or whether their agreement covers a particular controversy." *Swiger v. Rosette*, 989 F. 3d 501, 505 (6th Cir. 2021) *quoting Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). This agreement is more simply known as a delegation clause, and [o]nly a specific challenge to a delegation clause brings arbitrability issues back within the court's province. *Rent-A-Center*, 561 U.S. at 72 (unless a party 'challenge[s] the delegation provision specifically,' the court must 'leav[e] any challenge to the validity of the Agreement as a whole for the arbitrator')." *Id.* Notably, "[a] party may attack a delegation clause using the same arguments it raises against the entire arbitration agreement, but merely challenging the entire agreement will not suffice." *Swiger*, 989 F. 3d at 505, citing *Rent-A-Center*, 561 U.S. at 74.

Here, the parties agreed to arbitrate "all Disputes that are not resolved through mediation … including all disputes relating to the scope, validity, or enforceability of this Arbitration Agreement[.]" Doc. 1-4, p. 58-59: Doc. 1-5, p. 58-59. Plaintiffs do not specifically challenge the delegation clauses. Plaintiffs first assert that the arbitration provisions as a whole are void because they require arbitration to be held in Texas. Doc. 20, p. 3. This is an argument as to the validity of the arbitration agreements themselves, not a specific attack on the delegation clauses. Plaintiffs' contention falls squarely within the parties' agreements that all disputes as to the validity of the agreements are subject to arbitration. Plaintiffs further argue that the instant claims are outside the scope of the arbitration provisions because these claims can be asserted independently without reference to the contracts. Doc. 20, p. 5. Again, this is the exact type of argument that the delegation clause speaks to: a dispute relating to the scope of the arbitration clause. Lastly, Plaintiffs contend that the arbitration clauses are unconscionable due to disparities in bargaining power and because of the cost of mediation/arbitration. Doc. 20, p. 8. This is an

argument as to the validity and enforceability of the arbitration clause and thus falls within the scope of the agreement set forth in the delegation clause.

The plain language of the Agreements is clear that the parties intended that the arbitrator would resolve all disputes arising out of or related to the Agreements or out of "the relationship created by this Agreement."  The plain language further makes clear that the parties agreed to delegate the task of determining what *could be* arbitrated to the arbitrator.  As such, the Court agrees with Dickey's that the arbitrator should determine whether the scope of the arbitration agreement extends to the claims found in the Complaint.  To that end, Dickey's Motion to Stay in Favor of Mediation and, if Necessary, Arbitration is GRANTED. Doc. 15.

### III.  CONCLUSION

The Federal Arbitration Act provides that when a court compels arbitration "the court…shall on application of one of the parties stay the trial of the action…" 9 U.S.C. § 3. Further, the Sixth Circuit has indicated that a district court should ordinarily stay, rather than dismiss, an action after it compels arbitration where one party asks for a stay. *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F. 4th 938, 942 (6th Cir. 2021). Accordingly, Dickey's Motion to Stay in Favor of Mediation and, if Necessary, Arbitration is GRANTED. Doc. 15. Luminate Bank's Motion to Dismiss is DENIED at this time, subject to refiling, if necessary, at the completion of arbitration. Doc. 14.  The parties shall jointly notify the Court at the completion of arbitration. This matter is STAYED pending arbitration.

**IT IS SO ORDERED.**

April 30, 2025                                                 */s/ John R. Adams*
Date                                                         JOHN R. ADAMS
                                                                 UNITED STATES DISTRICT JUDGE